IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Jami L. Coffman, | : | |
| | : | Case No. 1:08-cv-491 |
| Plaintiff, | : | |
| | : | Chief Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER GRANTING SUMMARY |
| Ford Motor Company, | : | JUDGMENT |
| | : | |
| Defendant. | : | |

This matter is before the Court on Ford Motor Company's Motion for Summary
Judgment (doc. 18).  Plaintiff Jami L. Coffman filed this suit against her former employer,
Defendant Ford Motor Company ("Ford"), on the grounds that Ford terminated her employment
to retaliate against her for taking medical leave in violation of the Family and Medical Leave Act
("FMLA").  Ford moves for summary judgment on the merits and on the basis of the FMLA's
two-year statute of limitations.  For the reasons that follow, the Court will **GRANT** Ford's
motion.

## I.    BACKGROUND

### A.    Factual Background

Except as specifically noted otherwise, this statement of facts is derived from the facts
agreed upon in Defendant's Proposed Undisputed Facts and Plaintiff's Responses thereto.
(Docs. 19, 21).

Ford hired Coffman in 1999 as a manufacturing technician at its Sharonville
Transmission Plant.  (Coffman Dep. 112-13.)  She became a quality coordinator in 2001.
Coffman was an hourly employee and her employment was governed by a collective bargaining

agreement ("the CBA") between Ford and the United Auto Workers, Local 863 ("the Union").

1.      **The Process for Requesting Leave**[1]

Coffman had the right to take medical leave pursuant to the FMLA and under the relevant

CBA.  Ford employees who requested medical leave received the following documents from

Ford's medical department, also known as the Plant Hospital:  (1) a notice of their rights and

obligations under the FMLA, and (2) a medical certification form called a 5166 Form to be

completed by their physician.  The FMLA notice provided to employees who sought medical

leave stated in relevant part as follows:

> If your leave request is based on your own or an eligible family member's serious
> health condition you must complete and return appropriate medical certification
> (e.g. Form 5166, 5166B or 5166E), for the initial leave or extension, within 15
> calendar days of the Company's written request.  This notice is the Company's
> written request for this certification.  If you fail to return the completed
> certification within 15 calendar days, the Company may delay commencement of
> your FMLA leave until the certification is submitted, you may be classified as
> absent without leave, and you may not have any rights under FMLA for the
> portion of the absence or leave before you return a completed certification.  In
> addition, you may lose your rights under FMLA altogether and be subject to
> termination.

(Doc. 18-4.)

As to the 5166 Form, the doctor or nurses in the Plant Hospital would complete a section

---

[1] Defendant's proposed facts in this section regard its policies and procedures for
employee medical leave.  In her responses to the proposed facts, Coffman denies "for lack of
knowledge" many of the proposed facts.  This Court's Standing Order Governing Civil Motions
for Summary Judgment ("Standing Order") requires the non-moving party to admit or deny each
fact proposed by the moving party and to provide a citation to evidence supporting each denial.
(Standing Order ¶¶ (A)(2) and (3).)  Further, facts are deemed admitted unless specifically
denied.  (*Id.* ¶ (A)(1).)  Ford's policies and procedures permitting employees to take medical
leave are at the heart of this lawsuit.  These subjects are appropriate for discovery.  Coffman
cannot, after the close of discovery, deny such proposed facts, without any evidentiary support
for the denial, based upon an alleged lack of knowledge.

on the 5166 Form indicating the date the employee initiated leave and whether the employee was eligible for FMLA leave. (Dickhaus Dep. 17; Coffman Dep. Ex. 38.) The medical staff determined FMLA eligibility based on company records showing the numbers of hours the employee had worked and number of FMLA hours used. (Dickhaus Dep. 17-18.) Employees were required to have the 5166 Form completed by their physician and to return the 5166 Form to Ford. (Coffman Dep. 130-31.) Coffman understood that Ford preferred that the 5166 Forms be faxed in directly from the treating physician's office, but Michael Snell, then a supervisor in Ford's Labor Relation's Department, stated that the 5166 Forms could be brought in by the employee or faxed in by the physician. (*Id.*; Snell Dep. 35-36.)

Turning to an employee's right to take leave under the CBA, the CBA provided in relevant part as follows:

> An employee who is unable to work because of injury or illness, and who furnishes satisfactory evidence thereof, shall be granted an automatic sick leave of absence covering the period of such disability, . . . .
>
> * * *
>
> No sick leave shall extend beyond a period of time equal to the employee's seniority at the time the employee was removed from the active employment rolls of the Company or 18 months, whichever is greater; provided, however, that a sick leave because of compensable injury or occupational disease shall extend for the duration of the compensable total disability.

(Snell Supp. Aff. ¶ 3 & Ex. A.). Employees who took medical leave under the CBA ordinarily were required to provide satisfactory evidence of their injury or illness within five days of their return to work, but that deadline could be extended by two or three additional days in extenuating circumstances. (*Id.* ¶ 6.) The five-day deadline for submitting satisfactory evidence was not an explicit CBA requirement, but instead was based on Ford's past practice with the

Union at the Sharonville plant.  (*Id.*)  Satisfactory evidence was "medical documentation adequately supporting all days of their absences, which included a diagnosis, the date of the medical appointment, and the date of their covered absences."  (*Id.* ¶ 5.)

In situations where employees were off work for an extended period of time, and their medical certification from a physician had not been provided to Ford, Ford gave the employee written notification of the problem.  (Snell Dep. 35-36.)  Snell stated that there were "systems in place that protect Ford and the employees, that are negotiated in the agreement" in regards to ensuring that medical certification was received.  (*Id.*)  He described the systems as "complicated."  (*Id.* at 36.)

When employees took medical leave, but failed to provide timely documentation from their physician, Ford considered the employees to be "absent without leave" or "AWOL." Employees began receiving progressive discipline after they were AWOL three times in a three-month period.  At the initial step in the disciplinary process, the employee attended a disciplinary hearing and received an unpaid suspension equal to the "time of the hearing" ("TOH").  After the TOH suspension, the employee receives subsequent progressive discipline for any additional AWOL occurrences during the following year as follows:

| AWOL OCCURRENCE | PROGRESSIVE DISCIPLINE |
|---|---|
| Fourth | "Balance of shift" ("BOS") after hearing without pay |
| Fifth | BOS plus one-day suspension |
| Sixth | BOS plus three-day suspension |
| Seventh | BOS plus one-week suspension |
| Eighth | BOS plus two-week suspension |

4

| Ninth | One-month suspension |
|-------|---------------------|
| Tenth | Termination |

If the employee were AWOL on multiple occasions before the disciplinary hearing was held, then the employee received separate penalties in the disciplinary progression for each individual AWOL occurrence.  Progressive discipline was not specifically defined in the CBA, but rather was based on long-standing past practice with the Union.

### 2. Coffman's Leaves of Absence, Alleged AWOLs, and Discipline Up Through Termination

During the latter part of her employment with Ford, Coffman suffered from sleep apnea, though her problem was misdiagnosed for a period of time as other conditions.  (Coffman Dep. 70, 154-59.)[2]  Coffman knew that she was required to timely submit medical certification in order to receive medical leave under the CBA or FMLA.  Coffman requested medical leave on multiple occasions during the final year of her employment by contacting the Plant Hospital. She submitted timely medical certification supporting her need for leave and received excused leave under the FMLA or the CBA for a total of 86 scheduled work days—equal to 688 hours—during the final year of her employment.

Ford contends that Coffman took absences on more than ten other dates during her final year of employment for which she failed to submit timely medical documentation: November 17-18, 2004; December 16-17, 2004; February 16, 2005; March 16-18 and 21-22, 2005; and June 8, 13, 15, 17-20, 2005.  Ford classified Coffman as AWOL on these occasions and

---

[2] Coffman testified that her symptoms went away when she was properly diagnosed with sleep apnea and treated for that condition.  (Coffman Dep. 154-59.)

subjected her to progressive discipline as follows:[3]

| AWOL OCCURRENCE | PROGRESSIVE DISCIPLINE |
| --- | --- |
| December 17, 2004 | TOH suspension |
| February 16, 2005 | BOS suspension |
| March 16-18, 2005 | BOS plus one-day suspension |
| March 21-22, 2005 | BOS plus three-day suspension |
| June 8, 2005 | BOS plus one-week suspension |
| June 13, 2005 | BOS plus two-week suspension |
| June 15, 2005 | One-month suspension |
| June 17-20, 2005 | Termination |

Ford terminated Coffman on July 25, 2005 for the absences beginning on June 17, 2005.

Coffman filed a grievance protesting her termination, but the Union did not take the grievance to

arbitration.

Nonetheless, in this lawsuit, Coffman challenges the AWOL classifications and contends

that Ford terminated her because she took FMLA leave.  Coffman contends that she had

submitted the necessary medical documentation to have each absence excused as medical leave

pursuant to the FMLA.  (Coffman Dep. 166-68, 170-71, 223.)  The Court will examine the

circumstances of each absence in detail in the Analysis below.

**B.      Procedural Posture**

Coffman initiated this suit against Ford on July 23, 2008.  (Doc. 1.)  Coffman stated one

claim for FMLA retaliation.  (*Id.*)

---

[3] Ford administered each discipline after a disciplinary hearing was held.   Ford held a disciplinary hearing for each of Coffman's June 2005 absences on July 25, 2005.  The last three suspensions were issued and Coffman was terminated at that disciplinary hearing.  (Doc. 18-9.)

II.     **STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT**

Federal Rule of Civil Procedure 56 governs motions for summary judgment.  Summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  On a motion for summary judgment, the movant has the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).  In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).  The nonmoving party must "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Liberty Lobby*, 477 U.S. at 249.  A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.

III.    **ANALYSIS**

A.      **The FMLA**

The FMLA entitles an employee to twelve workweeks of leave per year if the employee

7

has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). FMLA regulations require that an employee be "employed for at least 1,250 hours of service during the 12-month period immediately preceding the commencement of the leave" to qualify for leave. 29 C.F.R. § 825.110(a)(2). A serious health condition is "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11); *see also* 29 C.F.R. § 825.115 (further defining).

Ordinarily, "a doctor's certification of a serious health condition is sufficient if it states (1) the date on which the serious health condition began, (2) the probable duration of the condition, (3) the appropriate medical facts within the health care provider's knowledge, and (4) a statement that the employee is unable to perform her job duties." *Novak v. MetroHealth Med. Center*, 503 F.3d 572, 578 (6th Cir. 2007) (citing 29 U.S.C. § 2613). The appropriate medical facts are those "sufficient to support the need for leave" and may include "symptoms, diagnosis, hospitalization, doctor visits, whether medication has been prescribed, any referrals for evaluation or treatment (physical therapy, for example), or any other regimen of continuing treatment." 29 C.F.R. § 825.306(a)(3).

"In general, if an employer lacks sufficient information about an employee's reason for taking leave, it should inquire further to ascertain whether the employee's leave was potentially FMLA-qualifying." *Nawrocki v. United Meth. Ret. Cmtys, Inc.*, 174 F. App'x 334, 338 (6th Cir. 2006). Moreover, "[a]n employer who finds an employee's certification to be 'incomplete' has a duty to inform the employee of the deficiency and provide the employee a 'reasonable

8

opportunity' to cure it."  *Novak*, 503 F.3d at 579 (citing 29 C.F.R. § 825.305(d)).  The Sixth

Circuit declined in *Novak* to determine if the employer has a similar duty where the employee's

certification is "inadequate" rather than merely "incomplete," *id.*, but this Court notes that the

relevant federal regulation requires the employer to give an employee a chance to cure both an

incomplete and an insufficient certification before denying FMLA leave.  *See* 29 C.F.R.

§ 825.305(c) & (d).  The FMLA regulations require that an employer give its employee seven

calendar days to cure the deficiencies, "unless not practicable under the particular circumstances

despite the employee's diligent good faith efforts."  29 C.F.R. § 825.305(c).  "If the deficiencies

specified by the employer are not cured in the resubmitted certification, the employer may deny

the taking of FMLA leave."  *Id.*[4]

The Sixth Circuit recognizes both interference and retaliation theories of recovery under

the FMLA:

> The "entitlement" or "interference" theory arises from [29 U.S.C.] § 2615(a)(1),
> which states that "[i]t shall be unlawful for any employer to interfere with,
> restrain, or deny the exercise of or the attempt to exercise, any right provided in
> this subchapter," and from [29 U.S.C.] § 2614(a)(1), which provides that "any
> eligible employee who takes leave ... shall be entitled, on return from such leave
> (A) to be restored by the employer to the position of employment held by the
> employee when the leave commenced; or (B) to be restored to an equivalent
> position."  The "retaliation" or "discrimination" theory arises from [29 U.S.C.]
> § 2615(a)(2), which provides that "[i]t shall be unlawful for any employer to
> discharge or in any other manner discriminate against any individual for opposing
> any practice made unlawful by this subchapter."

---

[4]  After the employee has been given an opportunity to cure deficiencies, the employer
may contact the health care provider to seek clarification or authentication of a certification
form.  29 C.F.R. § 825.307(a).  Also, if the employer has reason to believe that the physician's
certification is wrong, the employer can require the employee to obtain a second opinion.  *See* 29
U.S.C. § 2613(c).  The employer's right to seek a second opinion is permissive and the "failure
to require a second certification does not preclude the employer from contesting the employee's
certification."  *Novak*, 503 F.3d at 579.

*Arban v. West Pub. Corp.*, 345 F.3d 390, 400-01 (6th Cir. 2003). Coffman asserts an FMLA retaliation claim here.[5]

**B.     Prima Facie Case of Retaliation**

In analyzing Coffman's claim, the Court applies the indirect proof, burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Nawrocki*, 174 F. App'x at 339. In order to establish a prima facie claim of retaliation under the FMLA, Coffman must show that: (1) she was engaged in an activity protected by the FMLA; (2) her employer knew that she was exercising her rights under the FMLA; (3) her employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006). Ford disputes, for purposes of summary judgment, only whether Coffman can establish the fourth prong.

The Court finds that Coffman has sufficient evidence to establish the causation prong. It is undisputed that Coffman received 86 days of approved medical leave during the final year of her employment. She also sought medical leave numerous additional days from November 2004 through June 2005. "Making a request for leave is relevant to a claim for retaliation under the FMLA." *Shields v. Fox Television Station, Inc.*, No. 98-6689, 2000 WL 658054, at *3 (6th Cir. 2000); *see also Shepard v. Good Samaritan Hosp.*, No. 1:08-cv-357, slip op. at 20 (S.D. Ohio

_____

[5] Coffman specifies her claim as a retaliation claim only in the Complaint. (Doc. 1 at 3.) In her Memorandum in Opposition, in the section addressing whether Ford's conduct constituted a willful violation of the FMLA, she suggests for the first time that she has stated an interference claim as well. (Doc. 20 at 16.) However, Coffman has not moved for leave to amend her Complaint to add an interference claim. The Court will not consider a separate interference claim now. In any event, the Court believes that the evidence and analysis of an interference claim would overlap substantially with the evidence and analysis of the retaliation claim. The interference claim likely would fail on the same grounds as the retaliation claim.

Oct. 13, 2009) (finding prima facie case in part upon evidence of proximity in time between an employee's request for leave and her termination).  Ford terminated Coffman in July 2005 after determining that the June 2005 absences were not excused and that Coffman had accrued more than ten unexcused absences in one year.  Temporal proximity is sufficient indirect evidence of causation in this case to satisfy the causation element.  *See Singfield v. Akron Metro. Housing Auth.*, 389 F.3d 555, 563 (6th Cir. 2004) (finding three months lapse between the employee's protected act and the termination of his employment to be sufficient to establish causation at summary judgment stage).  Coffman has satisfied her prima facie burden.

**C.     Legitimate Non-Discriminatory Reason and Pretext**

Ford offers as its non-discriminatory reason for terminating Coffman that she had at least fourteen AWOL occurrences during the last year of her employment:  November 17-18, 2004; December 16-17, 2004; February 16, 2005; March 16-18 and 21-22, 2005; and June 8, 13, 15, 17-20, 2005.  Ford's progressive discipline policy called for termination of an employee who had more than ten AWOL occurrences in a one-year period.  To proceed to trial on her retaliation claim, Coffman must establish that this proffered reason is pretext for retaliation.  She attempts to establish that a reasonable jury could find that the proffered reason had no basis in fact or did not motivate her termination because her absences should have been excused as medical leave pursuant to the FMLA.  *See Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (explaining ways to prove pretext), *overruled on other grounds*, *Geiger v. Tower Auto.*, 579 F.3d 614, 621 (6th Cir. 2009).  Specifically, Coffman contends that the absences at issue should have been excused under the FMLA and the CBA.

**1.     November and December 2004 Absences**

To begin, Ford classified Coffman as AWOL on November 17-18 and December 16-17, 2004.  Ford subjected Coffman to a disciplinary hearing and issued an initial TOH suspension pursuant to its progressive discipline procedure following the fourth absence on December 17, 2004.

Coffman contends that her November and December 2004 absences should have been excused pursuant to the FMLA.  As to the November 2004 absences, her physician, Dr. Doris Corey, completed and dated a medical certification, *i.e.*, the 5166 Form, on December 6, 2004. (Coffman Dep. 172 & Ex. 22.)  Dr. Corey listed "left achilles tendonitis" as the diagnosis and stated that Coffman had been prevented from working on November 18 and 19, 2004.  (*Id.* Ex. 22.)[6]  Importantly, however, Dr. Corey indicated on the 5166 Form that Coffman's absence was not caused by a "serious health condition" as defined in the FMLA regulations at 29 C.F.R. § 825.115.  (*Id.*)  Attached to the 5166 Form is a  "Medical Review of Certification for [FMLA] Leave of Absence" form signed by a Ford medical representative which indicates that Coffman's leave in November 2004 was not approved as FMLA leave because it did "not involve a serious health condition as defined by the FMLA."  (*Id.*)

Coffman challenges Ford's inclusion of these November 2004 dates as AWOL absences contributing to her termination on the grounds that Ford did not identify those absences having led to progressive discipline in its Company Statement of Fact and Position ("Company Statement") dated January 18, 2006 in response to her Union grievance.  (Holcomb Dep. 32-33; Howard Dep. Ex. 1.)  "Inconsistency in an employer's explanation of the reasons for an adverse

---

[6] Coffman does not explain the discrepancy between Ford counting her as AWOL on November 17 and 18, 2004, while the 5166 Form addresses purported absences on November 18 and 19, 2004.

action raises an inference [of pretext] that must be drawn, at summary judgment, in favor of the nonmovant." *Coburn v. Rockwell Automation, Inc.*, 238 F. App'x 112, 122 (6th Cir. 2007) (internal quotation and citation omitted).  However, the Company Statement appears to address only those absences that led directly to progressive discipline being taken against Coffman.  Ford disciplined Coffman for only the December 17, 2004 absence pursuant to its progressive discipline policy, and therefore, Ford did not need to address the November 17, November 18, or December 16 absences in the Company Statement.  Also, as indicated above, Dr. Corey did not certify that Coffman's absences on November 17-18, 2004 were due to a serious health condition as defined by the FMLA.

As to the December 2004 absences, Coffman contacted Nurse Robin Dickhaus at the Plant Hospital on December 16, 2004.  (Coffman Dep. 158-59 & Ex. 19.; Lin 2d Supp. Dec. ¶ 5 & Ex. A.)  Nurse Dickhaus completed a "Visit Summary Report" in which she stated that Coffman had a "Moderate depressive episode," would be on leave from December 13, 2004 through January 5, 2005, and was "Unfit to Work."  (Coffman Dep. Ex. 19.)  Coffman contends that this "Unfit to Work" notation is evidence that Ford excused her December 2004 absences. The Court disagrees.

The Visit Summary Report facially suggests that Nurse Dickhaus made her assessments based on a telephone conversation with Coffman, not upon personal observation.  Under the category of "Person Statement" Nurse Dickhaus wrote: "Phoned for ML, start on 12/13/04, due to depression.  Expects to rtw on 12/20/04.  Req. 5166 faxed to Dr. Corey."  (*Id.*)  Dr. Chun-I John Lin, the Plant Physician, asserted that the "Unfit for Work" statement reflected only Coffman's request for leave, not a medical assessment about her ability to work.  (Lin 2d Supp.

13

Dec. ¶¶ 5-6.)  Coffman has not provided any evidence to rebut Dr. Lin's statement.  Finally, it is undisputed that Ford only granted medical leaves based upon a 5166 Form/medical certification form completed by the employee's physician.  In sum, Coffman does not establish with the Visit Summary Report that the December 16-17, 2004 absences should have been excused.

### 2.      February 16, 2004 Absence

Ford classified Coffman as AWOL again on February 16, 2005.  Ford issued Coffman a BOS suspension following a disciplinary hearing held on March 24, 2005.  Coffman testified that she had not asked for an FMLA leave for her February 16 absence prior to the disciplinary hearing, instead believing that it had qualified as a vacation day or personal day.  (Coffman Dep. 194-96.)  Coffman testified at her deposition that she discussed taking FMLA leave with Beth South, her supervisor, and Linda Allen, a Union representative, at the meeting, and then she went to the Plant Hospital to request an FMLA form.  (*Id.* at 29, 169, 197-198.)  Coffman testified that someone in the Plant Hospital gave her an FMLA form to complete.  (*Id.* at 197-98.)  However, Coffman admits that she never had her physician complete a medical certification for the February 16, 2005 absence.  (*Id.* at 203.)  Coffman provides no grounds for a reasonable jury to conclude that her absence qualified as FMLA medical leave.

### 3.      March 2005 Absences

Ford classified Coffman as AWOL again on March 16-18 and March 21-22, 2005.  Ford agreed with the Union to issue two penalties to Coffman for these March 2005 absences—a one-day suspension for the first three days and a three-day suspension the second two days—instead of five separate penalties on the progressive discipline scale.  Coffman signed the Disciplinary Action Reports indicating that she would receive two penalties for the absences of March 16

14

through March 22. (Doc. 18-8.)

Coffman contends that her March 2005 absences should have been excused pursuant to the FMLA. Coffman initially submitted two 5166 Forms to have her absences excused. (Lin 2d Supp. Dec. ¶ 8 & Exs. C, D.) In the first 5166 Form, date-stamped April 1, 2005 by the Sharonville Plant Hospital, Dr. Corey stated that Coffman was unable to work from March 16 through March 22 due to "EEG & other testing [/] petite-mall seizures." (*Id.* Ex. C.) In the second 5166 Form, also date-stamped by the Sharonville Plant Hospital on April 1, 2005, Dr. Corey stated that Coffman would be unable to work from March 16, 2005 through March 22, 2005 due to "anxiety due to medication adjustment." (*Id.* Ex. D.)

Either certification standing alone might have been sufficient to justify an FMLA leave. *See* 29 U.S.C. § 2613 (setting standard for medical certifications); 29 C.F.R. § 825.306(a)(3) (on medical facts necessary to support need for leave). Dr. Lin determined, however, that he needed additional information concerning the March 2005 absences because the 5166 Forms gave different reasons for Coffman's absence. (Lin 2d Supp. Dec. ¶ 9.) Employers can reasonably characterize contradictory medical certifications as insufficient to justify an FMLA leave. *See Novak*, 503 F.3d at 578. Dr. Lin also questioned the authenticity of the signature of Coffman's physician, Dr. Corey, based on a comparison with prior documentation. (*Id.*; Coffman Dep. Exs. 30-33.) Questions of authenticity are sufficient to rebut the presumption that a certification satisfies FMLA. *See Novak*, 503 F.3d at 578.

Ford, accordingly, sought clarification. *See* 29 C.F.R. § 825.305(c) & (d) (setting procedure for incomplete or insufficient certifications). With Coffman's written consent, Dr. Lin sought additional medical information from Dr. Corey concerning the March 2005 absences.

15

(Coffman Dep. 212-13 & Ex. 34.)  Dr. Corey responded by providing only a list of medications which Coffman was taking.  (Lin 2d Supp. Dec. ¶ 10 & Ex. E.)  The medications list included a "Date of Service" of March 17, 2006 and listed the "Chief Complaint" as "depression."  (*Id.* Ex. E.)  Dr. Lin concluded that Dr. Corey had not adequately explained what medical condition prevented Coffman from working during the March 2005 absences.  (*Id.* ¶ 10.)  In fact, the medications list did not explain what medical condition(s) Coffman had, the likely duration of her condition(s), the facts supporting the diagnosis, or whether her condition(s) prevented her from performing her job duties.  *See Novak*, 503 F.3d at 578 (citing 29 U.S.C. § 2613).  As such, the purported medical certifications provided by Dr. Corey failed to establish that Coffman was entitled to FMLA leave.

Finally, on July 25, 2005, Coffman made a final attempt to have her March 2005 absences excused by submitting a third 5166 Form.  (Lin 2d Supp. Dec. ¶ 11 & Ex. F.)  Dr. James L. Kolp stated on this 5166 Form a diagnosis of "depression" and that Coffman had been unable to work from March 16-18, 2005.  (*Id.* Ex. F.)  Dr. Kolp did not address Coffman's absences on March 21-22, 2005.  The 5166 Form, submitted more than three months after the relevant absences, was untimely.  The submission greatly exceeded the seven-day standard to cure deficiencies in an FMLA certification, 29 C.F.R. § 825.305(c), and the five- to eight-day standard applied by Ford pursuant to the Union CBA.  Ford's decision to treat the July submission as untimely, and to deny FMLA or CBA leave for the March 2005 absences, is not evidence of pretext in these circumstances.

### 4.    June 2005 Absences

Finally, Ford classified Coffman as AWOL on June 8, June 13, June 15, and June 17-20,

16

2005.  Following a disciplinary hearing held on July 25, 2005, Ford issued Coffman a one-week suspension for the June 8 absence, a two-week suspension for the June 13 absence, and a one-month suspension for the June 15 absence.  Ford terminated Coffman that same day for the absences beginning on June 17.

Ford asserts that Coffman was not eligible for FMLA leave by June 2005 because she had not worked 1250 hours in the previous year—June 2004 to June 2005.  (Dickhaus Dep. 21-22; Lin 2d Supp. Dec. ¶ 12.)  The FMLA requires that an employee be "employed for at least 1,250 hours of service during the 12-month period immediately preceding the commencement of the leave" to qualify for leave.  29 C.F.R. § 825.110(a)(2).  Coffman disputes Ford's calculation of her eligibility for FMLA leave in June 2005, but she does not provide evidence that she had worked the requisite 1250 hours.[7]  Coffman fails to create a genuine disputed issue of material fact on this issue.  Accordingly, because Coffman was not eligible for FMLA leave in June 2005, Ford's decision to characterize Coffman as absent without leave in June 2005 cannot be considered pretext for FMLA retaliatory discharge.

---

[7] Coffman points to her deposition testimony and the deposition testimony of Sandra Chance, a former Ford employee who tracked employee absences, on this issue.  Coffman testified at her deposition that she first made a request for FMLA leave on March 24, 2005.  (Coffman Dep. 193-98.)  This testimony does not establish that Ford granted Coffman FMLA leave in March 2005, nor that Ford granted Coffman FMLA leave that would extend through June 2005.

In her deposition, Sandra Chance testified that it was possible that she erred on a printout entitled "Employee FMLA Information" and dated July 21, 2005 which indicated that Coffman had used 40 hours of FMLA and worked 806 hours during the previous 53-week period. (Chance Dep. 34-35 & Ex. 2.)  The parties have agreed that Coffman took 688 hours of FMLA or CBA leave during her last year of employment, so the indication on the printout that Coffman had taken only 40 hours of FMLA leave may have been erroneous.  Regardless, Chance did not testify Coffman had worked 1250 hours during the previous year.  (*Id.*)  This evidence does not raise a genuine issue of disputed fact as to whether Coffman qualified for FMLA leave in June 2005.

Additionally, even had Coffman been eligible for FMLA leave in June 2005, and recognizing that she was eligible for CBA leave in June 2005, Coffman has failed to establish that her absences should have been excused.  The initial medical documentation Coffman provided to support these absences was an emergency room slip dated June 13, 2005, which was not signed by a physician, did not include a medical diagnosis, and did not state that any medical condition prevented Coffman from working.  (Lin 2d Supp. Dec. ¶ 13 & Ex. G.)  Ford concluded, consistent with the FMLA, 29 U.S.C. § 2613, that the emergency room slip was not sufficient to justify the June 13 absence.  (*Id.*)

A few days later, Coffman submitted a 5166 Form, signed and dated June 15, 2005 by Dr. Kolp, which stated a diagnosis of "78053 Obstructive Sleep Apnea" and which indicated that Coffman had been unable to work on June 13, 2005 only.  (*Id.* ¶ 14 & Ex. H.)  On lines on the 5166 Form where Dr. Kolp was to "[d]escribe the medical facts which support your certification[,]" Dr. Kolp wrote only to "see attached [emergency room] report provided by Bethesda North."  (*Id.*)  Dr. Lin concluded:

> Ms. Coffman's physician made no independent medical evaluation regarding Ms. Coffman's absence on June 13, and merely referenced the emergency room slip dated June 13 . . . .  As a result, the certification form completed by Ms. Coffman's physician provided no additional medical support for her absence on June 13, and was insufficient to justify medical leave under the CBA.

(*Id.* ¶ 14.)

Coffman did not provide additional documentation to Ford regarding her June absences until July 25, 2005, the day of her disciplinary hearing, when she submitted another 5166 Form from Dr. Kolp.  (*Id.* ¶ 15 & Ex. I.)  Regarding the June 2005 absences, Dr. Kolp diagnosed Coffman with "insomnia with depression" and stated as follows:

> pt with obstructive sleep apnea. confirmed by sleep study[.] was awaiting CPAP
> machine as of 6/27/05[.]

(*Id.* Ex. I.) Dr. Kolp stated on the 5166 Form that Coffman had been unable to work on June 8,

June 15, or June 17-20, 2005. (*Id.*) The July 25, 2005 documentation was untimely, however,

pursuant to both the FMLA, *see* 29 C.F.R. § 825.305(c) (seven-day standard), and to Ford's

established practice of requiring certification within five to eight days under the CBA. (Snell

Dec. ¶ 26.)

### 5. Summary of Pretext

Coffman's evidence is insufficient to establish pretext when taken as a whole. Coffman

failed to submit timely 5166 Forms for some absences and submitted conflicting and insufficient

documentation for some absences. A reasonable jury could not conclude on the basis of the

evidence presented that Ford's stated reason for terminating Coffman's employment was pretext

and that Ford's actual motivation was to retaliate against Coffman because she took or requested

to take FMLA leave. The Court will grant summary judgment to Ford on the FMLA retaliation

claim on the merits.

### C. Statute of Limitations

Moreover, even if the Court had found that Coffman presented sufficient evidence of

FMLA retaliation to present her case to a jury, her claim fails as a matter of law because it was

not filed within the applicable statute of limitations. The FMLA statute of limitations provides:

> (1) In general
>
> Except as provided in paragraph (2), an action may be brought under this section
> not later than 2 years after the date of the last event constituting the alleged
> violation for which the action is brought.
>
> (2) Willful violation

> In the case of such action brought for a willful violation of section 2615 of this title, such action may be brought within 3 years of the date of the last event constituting the alleged violation for which such action is brought.

29 U.S.C. § 2617(c).  Pursuant to this statute, the limitations period is normally two years, but is extended to three years if the FMLA violation was willful.  *Id.*  Coffman filed her lawsuit on July 23, 2008, just shy of three years after her termination on July 25, 2005.  Accordingly, her claim is not timely unless she can establish a willful violation.

"An employer commits a willful violation of the FMLA when it acts with knowledge that its conduct is prohibited by the FMLA or with reckless disregard of the FMLA's requirements." *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004).  "[T]he determination of willfulness involves a factual question."  *Id.*  In an attempt to demonstrate a triable issue of fact regarding willfulness, Coffman points to evidence that she objected to Ford at the time of her termination that she believed she had submitted the necessary certifications and that her absences should have been excused.  Her understanding on these issues was erroneous, however, as demonstrated by the detailed review above of the circumstances surrounding her absences.  Additionally, even if Coffman could establish that Ford erred in finding that particular absences were not excused pursuant to the FMLA, Coffman could not establish willfulness solely with evidence that Ford's determinations were negligent.  "The word 'willful' . . . is generally understood to refer to conduct that is not merely negligent."  *McLaughlin v. Richland Shoe Co.*,  486 U.S. 128, 133 (1988).  Coffman has failed to put forward any evidence demonstrating that Ford knew its conduct was prohibited by the FMLA or that it acted with reckless disregard of FMLA requirements.  Her FMLA retaliation claim, therefore, is untimely.  Ford is entitled to summary judgment on this additional basis as well.

20

**IV.    CONCLUSION**

For the foregoing reasons, Ford Motor Company's Motion for Summary Judgment (doc.

18) is **GRANTED**.

IT IS SO ORDERED.

                                       ____s/Susan J. Dlott_____
                                       Chief Judge Susan J. Dlott
                                       United States District Court